UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY D. DENNIS,

       Petitioner,

                         CASE NO. 2:06-CV-11928
   v.                       CHIEF JUDGE BERNARD A. FRIEDMAN
                         MAGISTRATE JUDGE PAUL J. KOMIVES

KENNETH McKEE,

       Respondent.
                     /


**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     D.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          2.    *Failure to Investigate Identification* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
          3.    *Failure to Challenge Voluntariness of Confession* . . . . . . . . . . . . . . . . . . . . . . . 10
     E.    *Petitioner's Request for Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

\*     \*     \*     \*     \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.    *Procedural History*

     1.     Petitioner Anthony Dennis is a state prisoner, currently confined at the Bellamy Creek Correctional Facility in Ionia, Michigan.

2. On May 9, 2001, petitioner was convicted of first degree premeditated murder, MICH. COMP. LAWS § 750.316(1)(a); and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On May 29, 2001, he was sentenced to a mandatory term of life imprisonment without parole on the murder conviction, and to a mandatory consecutive term of two years' imprisonment on the felony firearm conviction.

3. Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I. THE TRIAL COURT REVERSIBLY ERRED IN OVERRULING THE DEFENSE OBJECTION TO THE PROSECUTION ADMITTING INTO EVIDENCE THE SIGNED STATEMENT OF LATOYA DURRETT AS A PRIOR RECORDED RECOLLECTION, AS THE PROSECUTION FAILED TO ESTABLISH A SUFFICIENT FOUNDATION FOR ADMISSION UNDER THAT HEARSAY EXCEPTION.
>
> II. THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE DEFENSE REQUEST TO STRIKE THE TESTIMONY OF DESHAWN SMITH AFTER IT WAS SHOWN THAT MR. SMITH VIOLATED THE SEQUESTRATION AGREEMENT AT THE PRELIMINARY EXAMINATION, AND HEARD THE TESTIMONY OF LATOYA DURRETT AT THE EXAMINATION.

Petitioner also filed a *pro se* supplemental brief raising a claim that his trial counsel was ineffective in various respects:

> DEFENDANT-APPELLANT DENNIS ASSERTS HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS FEDERAL AND STATE CONSTITUTIONAL RIGHT, WHERE DEFENSE COUNSEL OTIS CULPEPPER AND ASSISTAN[T] COUNSEL ROBERT KENNY['S] PERFORMANCE WAS DEFICIENT . . . REASONING (1) DEFENSE COUNSEL OTIS CULPEPPER ABJECTLY FAILED TO INVESTIGATE THE IDENTIFICATION THAT WAS TRANSPIRED [sic] THROUGH A COERC[IVE] ATMOSPHERE AT 1300 BEAUBIEN PRECINCT; (2) COUNSEL HAD A MOTION FILED WITH THE TRIAL COURT ON MAY 2, 2001, FOR A WALKER HEARING TO CHALLENGE THE VOLUNTARINESS OF DEFENDANT'S STATEMENT, AND

THEN WAIVED THE WALKER HEARING MOTION, BEFORE THE COURT'S INITIAL INSTRUCTION TO THE JURY; (3) DEFENSE COUNSEL OTIS CULPEPPER FAILED TO ADEQUATELY PREPARE FOR PRELIMINARY EXAMINATION AND PASS VALUABLE INFORMATION OVER TO HIS ASSISTANT ROBERT KENNY TO INVESTIGATE DEFENDANT'S VIABLE DEFENSE AND; (4) TRIAL COUNSEL OTIS CULPEPPER WAIVED DEFENDANT'S WALKER HEARING BEFORE THE COURT'S INITIAL INSTRUCTION TO THE JURY AND DID NOT CHALLENGE THE MAKING OF DEFENDANT'S VOLUNTARINESS OR INVOLUNTARINESS INVESTIGATION BY DETECTIVE GERALD WILLIAMS AT 1300 BEAUBIEN PRECINCT ON JANUARY 17, 2000, AT 6:00 P.M., WHEN GERALD WILLIAMS WAS SQUEEZING HIS WRIST WITH HANDCUFFS.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. *See People v. Dennis*, No. 240747, 2004 WL 1837723 (Mich. Ct. App. Aug. 17, 2004) (per curiam).

4. Petitioner, proceeding *pro se*, sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Dennis*, 472 Mich. 895, 695 N.W.2d 73 (2005).

5. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 25, 2006. As grounds for the writ of habeas corpus, he raises the first, second, and fourth ineffective assistance of counsel claims that he raised in his *pro se* supplemental brief on appeal

6. Respondent filed his answer on November 27, 2006. He contends that petitioner's claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

The factual background underlying petitioner's conviction and the evidence adduced at trial was accurately summarized by the Michigan Court of Appeals:

> In the early morning of January 16, 2000, several individuals were gathered at the home of LaToya Durrett, located in the city of Detroit, drinking alcohol and watching a movie. At some point, several disturbances, including someone kicking the front door, caused some of the group to go outside. Durrett, while on the front porch, shouted to a group of men located across the street in a profane manner to stop

3

the disturbances. One of the men across the street responded in kind to Durrett's comments. Eric Morgan took exception to this individual swearing and speaking rudely to Durrett, who was fifteen at the time, and asked the unidentified speaker not to address Durrett in that manner. The speaker responded by stating something like, "[s]tep off the porch, and we going to give you something to kick on."

At this point the testimony conflicts. However, there is no dispute that Morgan stepped off the porch and moved toward the men across the street. As Morgan approached the street, someone in the group fired a gun hitting Morgan. Another shot was then fired again hitting Morgan. The group in the street dispersed into several cars, and began to leave. However, one car drove only a short distance before it stopped. An occupant stepped out and approached Morgan, who was on the ground. The person fired a shot at Morgan's head, killing him almost immediately. Testimony at trial indicated that Morgan had been shot with the same gun at least three times by two persons. The prosecutor contended that either, defendant or co-defendant, Randy Hunter, delivered the fatal shot.

The Detroit Police spoke to defendant on January 17, 2000. Defendant waived his *Miranda* rights and made a statement to Sergeant Gerald Williams of the homicide division. The court admitted this statement and Williams read it into the record. Defendant stated that he followed a friend named Keith to a third friend, Ralu's, house. He said that Keith went across the street, kicked the person's door, and then walked back to where the group of men stood. Defendant claimed that a man came running out of the house with his hand reaching under his coat in his waist area. Defendant stated that when the man reached the bottom of the stairs of the porch, defendant ran over and took a gun from another individual he identified as "Bear." Defendant claimed that he shot Morgan one time "low." He claimed that at that point he gave the gun back to Bear and ran to his gray Chevrolet Caprice. Defendant alleged that when he reached the car he heard two more shots, and that Bear entered the car after these shots. Defendant stated that if the person died, it was the result of the other shots, not his.

The prosecution subsequently charged defendant and Hunter with first-degree premeditated murder and felony-firearm. Defendant and Hunter were jointly tried, though Hunter received a bench trial. The jury convicted defendant of first-degree premeditated murder and felony-firearm. The trial court acquitted Hunter of all charges.

*Dennis*, 2004 WL 1837723, at *1-*2, slip op. at 1-2.

C.  *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

4

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.   *Analysis*

    1.   *Clearly Established Law*

6

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2. *Failure to Investigate Identification*

Petitioner first contends that counsel was ineffective for failing to investigate an

identification which he contends was coercive. The Court should conclude that petitioner's claim is without merit.

Petitioner's claim relates to the identification made by Latoya Durrett, and is based on her testimony at trial concerning the identification of petitioner and her statement to the police. At the outset, several of petitioner's factual assertions are belied by the record. For instance, petitioner claims that Durrett was unable to identify him at trial. However, while it is clear from the record that Durrett was scared and did not want to identify anyone, she did ultimately identify both Hunter and petitioner. *See* Trial Tr., Vol. II, at 79-82. Further, although petitioner claims that Durrett testified she was pressured into identifying petitioner, Durrett's testimony does not support this claim. Rather, Durrett testified that after the line-up, in which she identified no one, *see id*. at 131, her mother and a friend pressured her to tell the police what had happened despite her reluctance to do so. She did not testify that she was pressured into identifying anyone, or petitioner in particular. *See id*. at 77-78, 136-39. And defense counsel thoroughly cross-examined Durrett on her inability to remember many things regarding the shooting in general, and more specifically on her inability to identify petitioner at the line-up, the pressure she was under, and her lack of memory regarding the line-up itself. *See id*. at 131-39. In these circumstances, even if counsel should have more thoroughly investigated the circumstances of the line-up prior to trial, petitioner cannot establish that he was prejudiced by counsel's failure to do so.

Importantly, Durrett's testimony at trial provides no grounds upon which a pre-trial motion to suppress her identification of petitioner would have been successful. Durrett did not identify petitioner at the line-up, so there was no pre-trial identification to suppress. Nor could petitioner show that Durrett's in-court identification was tainted by an improper pre-trial identification

procedure. A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). Similarly, a subsequent in-court identification following an impermissibly suggestive pre-trial identification is unconstitutional if the pre-trial "identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). *See generally*, *Neil v. Biggers*, 409 U.S. 188, 197-98 (1972). A suggestive line-up alone, however, does nor require exclusion of identification evidence. "The admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson v. Brathwaite*, 432 U.S. 98, 106 (1977). Thus, the central question in a case where the pre-trial identification procedure is impermissibly suggestive is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Biggers*, 409 U.S. at 199; *accord Manson*, 432 U.S. at 114. The factors relevant to this "totality of the circumstances" analysis include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200; *accord Manson*, 432 U.S. at 114. Thus, a court must "follow[] a two-step analysis in determining whether an identification is admissible." *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001). First, the court must "consider whether the identification procedure was suggestive." *Id*. If it was not, the "identification testimony is generally admissible without further inquiry," and any

question as to the reliability of the identification "goes to the weight of the evidence, not its admissibility." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990).

Here, petitioner has presented no argument that the police line-up was unduly suggestive in that it was conducted in such a way as to create a probability of irreparable misidentification. Rather, petitioner's claim is solely that Durrett was pressured, after the line-up had been conducted, to cooperate with the police. Further, as noted above, Durrett did not identify petitioner at the pre-trial line-up, and those there was no antecedent identification which could taint her subsequent in-court identification. "Generally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir. 1994); *see also*, *Crozier*, 259 F.3d at 510. Here, Durrett's in-court identification was subject to cross-examination by petitioner's counsel, and counsel argued that Durrett's identification was unreliable. Because the in-court identification was properly admitted even assuming the truth of petitioner's claim, he cannot show that he was prejudiced by counsel's failure to more thoroughly investigate this matter. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

3.  *Failure to Challenge Voluntariness of Confession*

In his remaining two claims, petitioner contends that counsel's failure to challenge the voluntariness of his confession amounted to constitutionally ineffective assistance of counsel. Counsel initially filed a motion for an evidentiary hearing on the matter, but withdrew the motion shortly before trial. Petitioner contends that counsel's withdrawal of the motion was in retaliation for petitioner failing to pay him, and that the confession was involuntary because Detective Gerald Williams, the investigating officer, squeezed his wrists with handcuffs. The Michigan Court of

10

Appeals rejected petitioner's claim, concluding that there was no evidence to support petitioner's claim that counsel withdrew the motion based on petitioner's failure to pay, and that allowing the confession to come in as part of a defense-of-others defense was a legitimate trial strategy. The Court reasoned:

> Here, defense counsel had the daunting task of confronting numerous eyewitnesses, two of whom testified that defendant shot the victim in the head execution style and the other testified that defendant shot the victim at least twice and then provided the gun to another person to execute Morgan. Defense counsel could have challenged the admission of the statement into evidence and then attempted to impeach the numerous eyewitnesses to the shooting and convince the jury that they were all mistaken. Or defense counsel could have attempted to use defendant's statement to defendant's advantage and argue that Morgan was the initial aggressor and that defendant reasonably thought Morgan had a weapon and acted accordingly. Both are reasonable trial strategies, and this Court will not second-guess defense counsel on matters of trial strategy. Given that defense counsel employed a legitimate trial strategy in not objecting to defendant's statement, defendant did not receive ineffective assistance of counsel.

*Dennis*, 2004 WL 1837723, at *5, slip op. at 5-6. The Court should conclude that this determination was reasonable.

Petitioner's statement to the police was consistent with a defense-of-others defense. In his statement to the police, petitioner indicated that, after a verbal altercation, Morgan came running out of the house with his hand reaching into his coat at the waist area. Petitioner then fired one shot, aimed low. *See id.* at *1, slip op. at 2. This statement, if believed by the jury, would have been sufficient to support a defense-of-others defense. *See People v. Heflin*, 434 Mich. 482, 502, 456 N.W.2d 10, 18 (1990) ("In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm."); *In re Martines*, No. 249589, 2004 WL 2290468, at *1 (Mich. Ct. App. Oct. 12, 2004) (citing *People v. Kurr*, 253 Mich.App 317, 321, 654 NW2d 651,

11

653-54 (2002)) ("Self-defense applies to defense of others."). Because petitioner's statement to the police was consistent with a defense-of-others theory, the only question is whether counsel's decision to pursue that defense was reasonable.

In reviewing this claim, the Court must be mindful of the Supreme Court's admonition that, "[t]o counteract the natural tendency to fault an unsuccessful defense, a court reviewing an ineffective assistance of counsel claim must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,'" *Nix v. Whiteside*, 475 U.S. 157, 165 (1986) (quoting *Strickland*, 466 U.S. at 689); *see also*, *Griffin v. McVicar*, 84 F.3d 880, 888 (7th Cir. 1996) ("[T]he mere fact that a defendant chooses one of two available defenses cannot establish ineffective assistance of counsel, even if the defendant makes a bad choice."). "Generally, the decision whether to pursue a particular defense is a tactical choice which does not rise to [the] level of a constitutional violation." *Jones v. Hollins*, 884 F. Supp. 758, 765 (W.D.N.Y.), *aff'd*, 89 F.3d 826 (2d Cir. 1995); *see also*, *Lewis v. Alexander*, 11 F.3d 1349, 1353-54 (6th Cir. 1993). Here, counsel was faced with numerous eyewitnesses whose testimony, taken together, provided a compelling case regarding the events in question and petitioner's identity as one of the shooters. As the court of appeals noted, faced with this evidence counsel had the choice of attempting to have petitioner's statement suppressed and then trying to impeach all of the eyewitnesses, or pursuing a defense consistent with petitioner's statement to the police and at least somewhat consistent with some of the eyewitness testimony. In light of this evidence, counsel's choice of the later alternative was a reasonable tactical decision; at a minimum, the Michigan Court of Appeals's determination that this was a reasonable tactical decision did not amount to an unreasonable application of *Strickland*. The reasonableness of counsel's strategic decision is not lessened by the fact that the

strategy ultimately failed. *See Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc); *Mayes v. United States*, 93 F. Supp. 2d 882, 891 (E.D. Tenn. 2000) ("Simply because counsel was unsuccessful does not make him ineffective for Sixth Amendment purposes.").

As part of this claim, petitioner also asserts that counsel attempted to coerce him into taking the stand and perjuring himself to support the defense-of-others theory. The record belies this assertion. At trial, petitioner waived his right to testify on his own behalf. Upon questioning by counsel and the trial judge, petitioner indicated that he was aware of his right to testify, and that his decision not to testify was his own. He also indicated that no one had pressured him into that decision, and that he was satisfied with counsel's advice. *See* Trial Tr., Vol. III, at 199-200. These statements by petitioner carry a strong presumption of veracity. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."). Further, petitioner cannot show that he was prejudiced by counsel's alleged coercion because, in the end, he did not succumb to counsel's pressure and testify. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.   *Petitioner's Request for Evidentiary Hearing*

Petitioner requests that the Court conduct an evidentiary hearing on his claims. The Court should conclude that an evidentiary hearing is not necessary to resolve petitioner's claims, and thus should deny petitioner's request.

In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court

must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). An evidentiary hearing is permitted in this case under § 2254(e)(2). That section provides that, "[i]f the applicant has failed to develop the factual basis of the a claim in State court proceedings, the court shall not hold an evidentiary hearing on a claim unless" one of two exceptions is met. 28 U.S.C. § 2254(e)(2). Here, an evidentiary hearing is permissible because petitioner has not "failed to develop the factual basis" of his newly discovered evidence and ineffective assistance claims. In *Michael Williams v. Taylor*, 529 U.S. 420 (2000),[1] the Court explained that Congress' use of the term "'failed to develop' implies some lack of diligence[.]" *Id*. at 430. Thus, "[u]nder the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Id*. at 432. Here, petitioner sought an evidentiary hearing on his claims in connection with appeal, but was denied one by the state courts. Thus, he did not fail to develop the factual basis of his claim through some fault of his own. *See Mayes v. Gibson*, 210 F.3d 1284, 1288 n.2 (10th Cir. 2000) (*Michael Williams* standard satisfied where petitioner "raised the need for an evidentiary hearing" on direct appeal and in collateral review proceedings); *Morales v. Coyle*, 98 F. Supp. 2d 849, 893 (N.D. Ohio 2000) (*Michael Williams* standard satisfied where petitioner "sought an evidentiary hearing in state court, which was denied[.]").

---

[1]This case should not be confused with the *Williams v. Taylor* case discussed in part C, *supra*, in which the Court explained the standard of review under § 2254(d). Although both cases bear the same caption and were decided on the same date, the petitioners differed in the two cases. For clarity, I refer to the case discussing § 2254(e)(2) by the petitioner's full name–"Michael Williams"–rather than just by "Williams" as is the ordinary citation convention. *See Watkins v. Miller*, 92 F. Supp. 2d 824, 828 n.1 (S.D. Ind. 2000) (taking same approach).

14

Nevertheless, the Court should conclude that an evidentiary hearing is not necessary to resolve petitioner's claims. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). As the Supreme Court recently explained:

> In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.
> It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing

*Schriro v. Landrigan*, 127 S. Ct. 1933, 1940 (2007) (citations and footnote omitted).

Here, an evidentiary hearing would not have the potential to advance petitioner's claims. As noted above, petitioner cannot establish prejudice with respect to any of his claims even if, as he alleges, counsel's investigation was inadequate or the statement was involuntary. Because the prejudice prong of the *Strickland* test can be resolved on the basis of the state court record, an evidentiary hearing is not necessary under Rule 8. Accordingly, the Court should deny petitioner's request for an evidentiary hearing.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an

unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. The Court should also deny petitioner's request for an evidentiary hearing.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

       S/PAUL J. KOMIVES
       PAUL J. KOMIVES
       UNITED STATES MAGISTRATE JUDGE

Dated: 6/18/07